UNITED STATES of America, Plaintiff-Appellee,

v.

David BUENO, Defendant-Appellant.

No. 30252.

United States Court of Appeals, Fifth Circuit.

July 14, 1971.

Rehearing Denied Aug. 18, 1971.

James L. Gallagher, El Paso, Tex., for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., Victor K. Sizemore, Asst. U. S. Atty., El Paso, Tex., Romualdo C. Caballero, Atty., Dept. of Justice, Washington, D. C., on the brief, for plaintiff-appellee.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

There are two controlling questions on the appeal of this narcotics conviction.[1] The first is whether there is entrapment as a matter of law when a government informer furnishes the narcotics to the defendant for sale to a government agent. The second is whether the government has the duty of coming forward with contrary evidence when the defendant testifies to uncontradicted facts that would constitute entrapment as a matter of law, and there is no evidence to show that his testimony is untrue.

Holding that the uncontradicted facts testified to by defendant constitute a good defense on the ground of entrapment, and that the government failed to carry the burden of going forward with contradictory evidence, we have no alternative but to reverse this conviction.

The case has three principal participants—the Defendant, the Informer, and the Government Agent. As between the Government Agent and the Defendant, the Agent's testimony clearly supports the conviction. The Agent was introduced by the Informer to the Defendant, from whom the Agent bought heroin twice. He testified that the Defendant was ready, willing and able to sell the heroin, was not reluctant, did not have to be persuaded, and offered to sell more to the Agent at any time. Any testimony that the Defendant might have offered as to inducement by this Government Agent would clearly be resolved by a jury verdict.[2]

It was the activity of the Informer, who was not called to testify, that is fatal to this conviction.

Defendant, a narcotics addict, testified that he had met Informer, also a narcotics addict, near the bridge at the international boundary between Juarez, Chihuahua, Mexico, and El Paso, Texas, earlier on the day in question and at that time Informer had offered Defendant a fix of heroin. Both parties then registered as narcotic addicts and proceeded from El Paso to Juarez where Informer and Defendant participated in a fix, using a portion of the heroin which Informer had purchased. The balance of the heroin purchased by Informer was then transported to the United States by Informer, who on several occasions during this period of time had asked Defendant to make a sale of heroin. Informer explained he could not make the sale because he had already "burned" the prospective purchaser, who was represented to be a willing buyer. It was explained to the jury that the term "burned" meant a sale of narcotics which had been diluted and therefore was substantially less than it should have been. Defendant was taken to Chihuahua Street by Informer and instructed to wait there for the prospective purchaser. At all times prior to the discussion with the Government Agent, In-

1. Two counts of selling under 26 U.S.C. § 4705 and two counts of knowingly and fraudulently receiving, concealing and facilitating the transportation and concealment of narcotic drugs under 21 U.S.C. § 174.

2. Coronado v. United States, 266 F.2d 719 (5th Cir. 1969), cert. den., 361 U.S. 851, 80 S.Ct. 112, 4 L.Ed.2d 90; United States v. Prieto-Olivas, 419 F.2d 149 (5th Cir. 1969); Velez v. United States, 397 F.2d 788 (5th Cir. 1968), cert. den., 393 U.S. 1096, 89 S.Ct. 885, 21 L.Ed.2d 787; Matherne v. United States, 397 F.2d 406 (5th Cir. 1968), cert. den., 393 U.S. 987, 89 S.Ct. 463, 21 L.Ed.2d 448; Washington v. United States, 275 F.2d 687 (5th Cir. 1960); Accardi v. United States, 257 F.2d 168 (5th Cir. 1958), cert. den., 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112; Hannah v. United States, 396 F.2d 785 (5th Cir. 1968); Suarez v. United States, 309 F.2d 709 (5th Cir. 1962).

former had possession and custody of the heroin. After the parties had walked to Defendant's apartment, Informer got the heroin and, at that time, Defendant and Informer mixed the heroin with brown sugar and the first sale was consummated.

Defendant further testified that when the Agent requested additional heroin, Informer and Defendant then proceeded back to Juarez, where heroin was purchased by Informer on credit. Informer again imported the heroin into the United States and the two returned to Defendant's home, where the heroin was again mixed with brown sugar. After this had been completed, the parties proceeded to a grocery store located near the Defendant's residence and Informer received $100.00 out of the $160.00 purchase price. Defendant testified that the entire transaction had been arranged and discussed with him by Informer. The true identity of the Agent who purchased the narcotics from Defendant was never disclosed to him.

The Informer was in the employment of the United States Government, having been paid approximately $500.00 for his work in El Paso, which included other narcotic investigations. His government employers knew that he had been an addict, although the government witnesses denied that they knew he was using narcotics at the time.

## I.

If this testimony is true, it is quite apparent that the heroin was purchased in Mexico with the government Informer's money and credit. It is further apparent that the heroin was smuggled into the United States by the Informer. The story takes on the element of the *government buying heroin from itself,* through an intermediary, the defendant, and then charging him with the crime. This greatly exceeds the bounds of rea-

son stated by this court in Williamson v. United States, 311 F.2d 441 (5th Cir. 1962).

Whether entrapment is shown as a matter of law when an informer furnishes the goods to the prospective seller apparently has not been decided by this court. However, several recent cases from other jurisdictions so hold. United States v. Dillet, 265 F.Supp. 980 (S.D. N.Y.1966); United States v. Silva, 180 F.Supp. 557 (S.D.N.Y.1959); People v. Carmichael, 80 Ill.App.2d 293, 225 N.E. 2d 458 (1967); People v. Strong, 21 Ill. 2d 320, 172 N.E.2d 765 (1961); People v. Jones, 73 Ill.App.2d 55, 219 N.E.2d 12 (1966); State v. Boccelli, 105 Ariz. 495, 467 P.2d 740 (1970). Cf., United States v. Chisum, 436 F.2d 645 (9th Cir. 1971).

■ It should be noted that there is no indication that this was an overall design of the law enforcement people. There is no evidence from which to infer that the purchasing Agent knew of this activity of the Informer, who was employed only on a temporary basis. However, we believe that the facts must be viewed in their entirety for the purpose of considering their effect on this prosecution. Both the Agent and the Informer must be treated as acting in concert, each with full knowledge of the actions of the other. Sherman v. United States, 356 U.S. 369, 373–375, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

The government does not attempt to deal with the above cases or with the principle of law for which they were cited by appellant.

Instead, the government argues that the defendant produced no corroborating evidence for his testimony; that the issue of entrapment is one for the jury to determine rather than the court;[3] that even though defendant's testimony was largely undisputed, the jury was still entitled to reject his testimony *in toto;*[4] and that the evidence of the willingness

---

3. See footnote 2, supra.

4. United States v. Burgess, 433 F.2d 987 (5th Cir. 1970); United States v. Morell,

423 F.2d 1212 (5th Cir. 1970); Eisenhardt v. United States, 406 F.2d 449 (5th Cir. 1969). See also Silva v. United States, 212 F.2d 422 (9th Cir. 1964).

of defendant to sell to the Agent permitted the jury to disbelieve defendant's testimony.[5]

This line of argument misses the point. The defense of entrapment has undergone much maturation since first announced by the Supreme Court, and both the courts and the legal writers offer varying theories upon which it is based. Sorrells v. United States, 287 U. S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Orfield, The Defense of Entrapment in the Federal Courts, 1 Duke L.J. 39 (1967); Note, The Serpent Beguiled Me and I Did Eat—The Constitutional Status of the Entrapment Defense, 74 Yale L.J. 942 (1965); Note, 45 Texas L.R. 578 (1967); Note, Applying Estoppel Principles in Criminal Cases, 78 Yale L.J. 1046 (1969); Sherrill, The Defense · of Entrapment: A Plea for Constitutional Standards, 20 Fla.L.R. 63 (1967); Note, Entrapment: Instigation, Not Investigation, 26 La.L.R. 848 (1960); Rotenberg, The Police Detection Practice of Encouragement, 4 Houston L.R. 609 (1967).

The facts of this case clearly fit within the framework of the law in this field. If Defendant is to be believed, the sales of heroin were made through the creative activity of the government. The Defendant would not have had the heroin to sell if it had not been purchased by the Informer. In fact, this particular heroin would apparently not have been in the United States at all, if it had not been smuggled in by the Informer.

We hold that as a matter of law, if these facts be true, the Defendant cannot be convicted of the possession, handling and sale of the heroin.

## II.

■ The question then comes as to whether the government can rest on the challenge to the credibility of the Defendant, or whether it must come forward with some contradictory evidence.

The evidence of willingness to make the sale, which is common to the usual entrapment defense, is no answer. In such cases where the issue is willingness or unwillingness of the defendant, the defense becomes a jury question because the sale itself constitues evidence of willingness contrary to the defense of unwillingness. The issue there is not what he did but why he did it, i. e., because of coercion. The issue here is what he did, i. e., taking heroin from one government agent and selling it to another. The government's case cannot rest on the mere fact that he entered into the Informer's plan willingly.

Neither party produced the Informer. If the Informer's testimony would tend to disprove the Defendant's story, it was up to the government to produce him. The Defendant having testified to facts which establish a defense as a matter of law, the government has the duty to come forward with contrary proof, if it is to carry its ultimate burden of proving guilt beyond all reasonable doubt. United States v. Groessel, 440 F.2d 602 (5th Cir. 1971).

Thus, we hold that the conviction on this record must be reversed and the case remanded for retrial. If the government cannot come forward with evidence that contradicts Defendant's testimony, then he is entitled to discharge, as a matter of law. If the government produces evidence sufficient to raise a jury question, then the case should be submitted with proper instructions in accordance with this opinion.

Reversed and remanded.

5. United States v. Prieto-Olivas, *supra*; Cazares-Ramirez v. United States, 406 F.2d 228 (5th Cir. 1969); Goss v. United States, 376 F.2d 812 (5th Cir. 1967); Suarez v. United States, 309 F.2d 709 (5th Cir. 1962); Jasso v. United States, 290 F.2d 671 (5th Cir. 1961), cert. den., 368 U.S. 858, 82 S.Ct. 97, 7 L.Ed.2d 55; Kivette v. United States, 230 F.2d 749 (5th Cir. 1956), cert. den., 355 U.S. 935, 78 S.Ct. 419, 2 L.Ed.2d 418.