UNITED STATES of America

v.

Oscar DOVALINA and John Doe, a/k/a Rodolfo Soliz.

Cr. No. 73–C–154.

United States District Court, S. D. Texas, Corpus Christi Division.

Nov. 12, 1974.

Stephen Rice, Asst. U. S. Atty., Corpus Christi, Tex., for the United States.

Daniel V. Alfaro, Corpus Christi, Tex., for Dovalina.

J. A. Canales, Corpus Christi, Tex., for Doe.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The Defendants herein were charged with unlawfully, knowingly, and wilfully distributing Cocaine on the 26th day of April, 1973. The government's evidence showed a sale of Cocaine by the Defendants to an undercover agent. This transaction was brought about by an informer. As a part of its case in chief, the government offered testimony that the informer could not be located. When the United States rested, the Defendants moved for judgment of acquittal on several grounds, including unlawful entrapment because the Defendants sold to government agents. The Court considered such ground prematurely raised, since, ordinarily, entrapment is a factual defense. All such motions were denied. At this point, there was no implication that the informer involved had furnished the Cocaine to the Defendants.

Then Defendant Dovalina took the stand and testified, in effect, that the Cocaine which he delivered to the government undercover agent had been given to him by the individual, that is, the informer, whom the government was unable to produce for this trial. The government rebutted that Defendant's testimony through the use of the undercover agent and police officers who were on surveillance duty. So, questions of fact were involved. However, since the informer was not present and did not testify, each Defendant orally moved, after all parties had closed, for judgment of acquittal, as a matter of law, on the ground of entrapment, under the case of United States v. Bueno, 447 F.2d 903 (5th Cir. 1971).

At this point, the Court recognized it was faced with a serious *Bueno* problem. That case is still viable. The Fifth Circuit did not change its opinion in United States v. Oquendo, 490 F.2d 161 (5th Cir. 1974), or in United States v. Mosley, 496 F.2d 1012 (5th Cir. 1974).

The Defendants argued that, under *Bueno,* the government had to produce the informer, place him on the stand, and, through him, contradict Dovalina's testimony in order to take the case to the jury. The Defendants said the testimony of different government witnesses, which otherwise contradicted the Defendant Dovalina's story was to be entirely disregarded. This Court, for reasons later explained, denied the motion for judgment of acquittal on such ground. There were other grounds set forth as reasons why judgment of acquittal as to each Defendant should be granted, but we are not concerned with the other grounds in this memorandum.

After arguments of counsel, the Court instructed the jury as to the definition of unlawful entrapment, as requested in writing by the Defendants, and the Court went further, instructing the jury, in effect, that the government had the burden of establishing beyond a reasonable doubt that the Defendant Dovalina did not, in fact, get the Cocaine involved from the informer. The jury found both Defendants guilty as charged, and the verdicts were filed. Subsequently, the Defendants filed their respective motions, in writing, for judgment of acquittal. These two motions are now before this Court.

This Court is aware that, in the face of Defendant Dovalina's testimony that an informer furnished the Cocaine, and the government's inability to produce the informant to contradict that evidence, if the *Bueno* decision and the other cited cases establish an absolute rule, these two motions should be granted. But, perhaps circumstances can exist, in what appears to be a *Bueno* situation, where the informer's testimony is not absolutely necessary for the government's case. Perhaps *Bueno* does not say that in every conceivable situation where a Defendant claims an informer sold him the stuff, the claimed informer must take the stand and contradict the Defendant.

The Court does not intend to disregard the holdings in the above-cited cases. But, it believes there is justification for holding that such cases do not require the informer to have testified here, and now wishes to explain the reasons. Mainly, the Court denied the initial oral motions for judgment of acquittal as to both Defendants because, in its opinion, the facts developed on the trial and the circumstances surrounding the trial procedures were sufficient to warrant the rejection of the absolute defense which the Defendants contend is afforded them by the cited cases. Its viewpoint has not changed.

In this regard, we want to further discuss Dovalina's testimony. He was an admitted go-between in narcotic deals, and tried, unconvincingly, to draw the picture of a duped victim. His story of what happened was illogical and not believable, but, taken at its best, there was no hint of reluctance on the part of Dovalina or Soliz to participate, as they did, in arranging for and participating in the sale of the Cocaine well before they reached the place of delivery. The undercover agent's explanation of the customary search made of the informer's person, immediately before meeting Dovalina, referred to as a strip search, negatived any probability of the informer having any weapons, or contraband of any kind, on him. Also, a city police officer on surveillance gave testimony which supported the undercover agent's testimony as to what occurred. Certainly Dovalina, although we recognize predisposition is not in issue under *Bueno,* did have the predisposition to aid and abet in the distribution of the Cocaine. There was, obviously, no entrapment of Defendants, or either of them, as it is usually defined.

This Court is aware of language in Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413 (1932), which says, in effect, no advance notice of an ordinary entrapment plea need be given by a Defendant to the government. In such cases, the jury may believe, or not, the Defendant's story of entrapment. The government witnesses necessary to make its case are available to re-

fute what the Defendant says. The Defendant's credibility is in issue. However, if *Bueno* is absolute, in the entrapment defense which Dovalina claims, the informer's absence may result in a judgment of acquittal, although his testimony is not necessary to the government's case. Also, the credibility of the Defendant is not in issue until after the informer testifies. This situation is distinguishable from *Sorrells*.

Frequently, the government will not call each witness who knows something about the case. A witness not essential to the government's case in chief, or one whose testimony is only cumulative, may not be called. So, it should not be required of the government to anticipate every possible defense for which the Defendant may contend. As here, the undercover agent was the only witness needed to establish the transaction as the government knew it, and he testified. He could, and did, refute the testimony of Defendant Dovalina.

Once the government calls its first witness, it is too late to turn back. Double jeopardy attaches. When this situation exists, without any hint from the Defendant that his defense will make a particular government witness absolutely necessary as a rebuttal witness, the government's case should have some shield from a motion for acquittal as a matter of law. At no time during pretrial procedures in this case did Defendants give any indication that entrapment would be the defense relied upon by them, nor did they, at any point prior to Defendant Dovalina's taking the stand, give any indication that Defendant Dovalina would claim the Cocaine was furnished to him by the informer. Before Dovalina took the stand, the Court was advised, in the presence of the United States Attorney, that Defendant Dovalina would testify against the advice of counsel. Subsequently, Defendant Soliz took the stand mainly, in rebuttal, to support Dovalina's story.

It is true that, prior to the commencement of testimony, the government had furnished the name of the informant to both Defendants. But, at this point there was no indication that a *Bueno* defense would be urged. The government's testimony that the informer could not be found does not indicate that it had foreseen such a defense. It was, as the Court saw it, the usual preventive testimony so the government could answer Defendants in jury argument, when their counsel wondered why the informant did not testify. So, the government cannot be charged with lack of good faith and efficiency in the preparation of its case.

In addition to the reasons given for a Defendant to be required to give advance notice of a *Bueno* defense a reasonable time before trial, we wish to point out another problem which can very easily arise under *Bueno*. Suppose there is no informer, but the Defendant says there was. What protection does the government have then? The falsehood of the Defendant will set him free, if *Bueno* is strictly applied. The probability of this sort of dilemma warrants some modification of what appears to be, under *Bueno*, a very strict and unyielding rule.

Certainly, the rights of alleged narcotics violators must be protected, but, on the other hand, the hands of law enforcement personnel should not be unnecessarily tied. Without undercover agents and informers, this vicious traffic would go on with freedom. It seems to this Court to follow *Bueno*, *Oquendo* and *Mosely* in the context of this case would be an open invitation for dope peddlers generally to arrange the disappearance of the informer and lie with impunity. Those seriously involved in the hard-drug traffic are not petty operators. Murder sometimes follows undercover and informant interference with their profitable activities.

While the part played in this drama by Defendant Soliz was different than that of Dovalina, it is apparent that, should Dovalina's story stand, the government's case against Soliz would also fall.

Consequently, the Court now affirms its first conclusion that the Defendants are not entitled to depend on the failure of the informant to appear and contradict the testimony of Dovalina, and that the written motions for judgment of acquittal, which were filed herein after the jury verdicts were filed, should be denied.

It is, therefore, ordered that said motions for judgment of acquittal, filed in writing and now before this Court, are hereby denied. The verdicts of guilty as to these two Defendants will stand. It is so ordered. These Defendants are ordered to appear for sentencing on the 22nd day of November, 1974, at 1:30 o'clock p. m.

A copy of this memorandum and order shall be furnished to appropriate counsel.